UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JENNIFER DEL PRETE, | ) |
|     Plaintiff, | ) ) ) |
|     v. | ) No. 17-cv-6145 ) ) Magistrate Judge Keri L. Holleb Hotaling |
| VILLAGE OF ROMEOVILLE, ILLINOIS, KENNETH KROLL, SCOTT MCLAUGHLIN, UNKNOWN OFFICERS OF ROMEOVILLE POLICE DEPARTMENT, and DR. EMALEE FLAHERTY, | ) ) ) ) ) ) ) |
|     Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff's partially opposed motion for entry of a HIPAA and mental health protective order [Dkt. 152]. For the reasons set forth below, the Court grants Plaintiff's motion, with the modifications indicated.

**I.    BACKGROUND**

Despite its almost eight-year age, this case has made very little substantive progress, because of necessary long-term stays for ongoing state-court criminal proceedings. Plaintiff alleges she was wrongfully convicted of having murdered an infant in her care and spent nearly ten years in prison as a result, causing her children to grow up largely without her and her to miss out on "the various pleasures of basic human experience" throughout her incarceration. (Dkt. 1 ¶¶ 63, 64.) She alleges "substantial" and "incalculable" emotional pain and suffering from the publicity and nature of the charges against her, which caused "stigma, . . . fear[,] and distress during her nearly decade-long detention" and ongoing "feelings of nervousness, fear, distress, and worry about the future." (*Id*. ¶¶ 63, 64.) Among other claims, Plaintiff brings a state-law claim for intentional infliction of emotion distress, in which she asserts Defendants acted with the intent to

cause or reckless disregard of the probability of causing Plaintiff "severe emotional distress" and that Plaintiff in fact endured and continues to endure "emotional distress and other grievous and continuing injuries and damages[.]" (*Id*. ¶¶ 99-100.)

The parties have reached an impasse on a proposed protective order covering Plaintiff's mental health records. Although the parties generally agree upon entry of a HIPAA protective order, Plaintiffs seek to include, over Defendants' objection, a provision requiring "that potentially privileged mental-health documents subpoenaed by [any party be] returned to [] Plaintiff" for a "privilege review[,]" solely for the psychotherapist-patient privilege, to be completed within seven days of Plaintiff's receipt of the documents. (Dkt. 152 at 3, 6-8.) Plaintiff insists it is "unlikely" that privilege would be asserted over any document, and she would create a corresponding privilege log for any claims of privilege. (*Id*. at 2, 5.) Plaintiff envisions the Court then "resolv[ing any resulting] dispute with a concrete set of documents in mind." (*Id*. at 4.) Defendants insist Plaintiff has already categorically waived the psychotherapist-patient privilege by placing her mental health at issue through her allegations of her injuries and note that a temporal limitation would sufficiently prevent overreaching subpoena requests; they also raise concerns that Plaintiff will cherry-pick records and wield the privilege as both a sword and shield. (Dkt. 152 at 2-3.) The motion is fully briefed, and the Court heard arguments on the motion at an in-person hearing on May 8, 2025.

## II. DISCUSSION

Despite the depth of law about what constitutes waiver of the psychotherapist-patient privilege, it is surprisingly unsettled. Following *Jaffee v. Redmond*, 518 U.S. 1, 15 & n.14 (1996), in which the Supreme Court held that psychotherapist privilege protects confidential communications between a patient and psychotherapist absent the patient's waiver of the privilege, federal courts nationally and even "[c]ourts in the Seventh Circuit have developed" "divergent"

2

and "inconsistent approaches to determin[ing] when and how a patient waives the privilege." *Johnson v. Guevara*, No. 20-cv-4156, 2021 WL 12298819, at *1 (N.D. Ill. Aug. 2, 2021) (citations omitted); *Caine v. Burge*, No. 11-cv-8996, 2012 WL 6720597, at *2 (N.D. Ill. Dec. 27, 2012) (citations omitted). Although "numerous judges in this district have analyzed this issue," they also have reached "no consensus as to what the Seventh Circuit truly meant with" its only "brief statement" on the issue that, "[i]f a plaintiff by seeking damages for emotional distress places his or her psychological state in issue, the defendant is entitled to discover any records of that state." *Coleman v. City of Chi.*, No. 18-cv-998, 2019 WL 7049918, at *1 (N.D. Ill. Dec. 23, 2019) (quoting *Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006)). Three approaches, termed the "narrow", "broad," and "middle ground," have emerged. *See id.* (citing cases). Under the "narrow" approach, a patient waives the privilege only by placing the substance of psychotherapeutic communications directly at issue or seeking testimony from the therapist. *See id.* (citing *Taylor v. Chi.*, No. 14-cv-737, 2016 WL 5404603, at *2 (N.D. Ill. Sept. 28, 2016)). The "broad" approach deems the privilege waived if a party seeks emotional distress damages. *See id.* (citing *Laudicina v. City of Crystal Lake*, 328 F.R.D. 510, 513 (N.D. 2018)). The "middle ground" approach finds no waiver with "garden variety" emotional distress claims that include no "separate tort" claim for the distress or allegations of any specific psychiatric injury, disorder, or unusually severe distress but finds waiver where the party plans to introduce at trial evidence of psychological treatment to show damages. *See id.* (citing *Flowers v. Owens*, 274 F.R.D. 218, 225 (N.D. Ill. 2011)); *Caine*, 2012 WL 6720597, at *2-3 (citations omitted). "'Garden variety emotional distress' includes humiliation, embarrassment, and" similar emotions but not "any resulting symptoms or conditions" such as "sleeplessness, nervousness, and depression." *Iglesias v. Guevara*, No. 19-cv-6508, 2021 WL 12334555, at *3 (N.D. Ill. June 30, 2021) (cleaned up).

Like the court in *Johnson*, 2021 WL 12298819, at *2, the Court finds the question of whether Plaintiff has waived the psychotherapist-patient privilege to be prematurely presented in this case, which has barely passed the pleadings stage. Although some of the Court's esteemed peers have deemed allegations like Plaintiff's to constitute a categorical waiver of the psychotherapist-patient privilege, *see, e.g.*, *Iglesias*, 2021 WL 12334555, at *3; *Liebich v. Delgiudice*, 20-cv-2368 (N.D. Ill.) (Dkt. 99, Order of Feb. 12, 2021); *Jakes v. Boudreau*, No. 19-cv-2204, 2020 WL 5297007, at *2 (N.D. Ill. Sept. 4, 2020), others have based their decisions upon case developments beyond the pleadings, *see Coleman*, 2019 WL 7049918 ("Coleman's pleadings, interrogatory responses, and document productions demonstrate that there has already been a waiver of the psychotherapist-patient privilege in this case, no matter which approach is applied."), or have entered orders with procedures akin to those proposed here. *See, e.g., Martinez v. Guevera*, No. 23-cv-1741 (N.D. Ill.) (Dkt. 114, order of Dec. 11, 2023); *Johnson*, 2021 WL 12298819, at *2 (indicating that court would decide waiver issue if and when plaintiff asserted privilege after reviewing documents); *Caine*, 2012 WL 6720597, at *4 (adopting plaintiff's suggestion to permit plaintiff's counsel to review mental health records before turning them over to defense counsel). The Court agrees with the latter approach and will adopt Plaintiff's proposed procedure, modified only slightly as explained below.

Although Defendants argue that Plaintiff's proposed procedure will cause delays in discovery and impose potential burdens upon them to ensure that subpoena recipients comply with the procedure, in the Court's estimation, any delay and any imposition upon Defendants will be minimal, particularly because the ensuing HIPAA order will direct compliance with the procedure and timeline. Nor does the Court see any real concern that Plaintiff inappropriately will "cherry-pick" records, given potential downsides to Plaintiff invoking the privilege. That said, the Court agrees with Defendants that Plaintiff's proposed procedure should apply *only* to mental health

4

records, not other medical records. Also, as discussed during the motion hearing, unless the parties agree or the Court directs otherwise, the Court sets a temporal limit of five (5) years before Plaintiff's arrest on the medical and mental-health records. *See Jakes*, 2020 WL 5297007, at *4.

Finally, Plaintiff realistically posits that she is unlikely to invoke the privilege, given the incentives to avoid invoking it. The Court will address any invocation of privilege if and when it is brought to the Court's attention. But, like the *Caine* court, the Court is skeptical that Plaintiff properly could maintain the psychotherapist-patient privilege if she wants to introduce testimony about "the specifics of emotional damages" or to "argue that they [are] uncommon, or severe." 2012 WL 6720597, at *4.

### III. CONCLUSION

Plaintiff's motion for entry of HIPAA and Mental Health Protective Order [Dkt. 152] is granted, with the modifications and for the reasons set forth above. By May 16, 2025, the parties shall confer and submit a proposed order that comports with the above to Judge Holleb Hotaling's Proposed Order email, Proposed_Order_HollebHotaling@ilnd.uscourts.gov. The joint status report date of June 23, 2025 [Dkt. 157] stands.

ENTERED: May 13, 2025

                                                 Hon. Keri L. Holleb Hotaling
United States Magistrate Judge